## A10A2301. PENDLEY v. THE STATE.
(709 SE2d 18)

PHIPPS, Presiding Judge.

Daniel Pendley was convicted of and sentenced for aggravated child molestation,[1] rape,[2] attempted child molestation,[3] and first degree cruelty to children[4] for acts committed against J. D., the daughter of Pendley's girlfriend. He appeals, asserting that the evidence was insufficient to support his convictions and that the court erred in admitting similar transaction evidence, giving an improper jury charge, and failing to merge two of the counts for purposes of sentencing. Finding no error, we affirm.

The indictment alleged that the crimes occurred between December 2000 and January 2002 in Gilmer County. At that time, J. D. lived with her mother, her brother, and Pendley. In January 2002, the Department of Family and Children Services (DFCS) obtained custody of J. D. because of her mother's neglect. In 2003, when she was twelve years old, J. D. made a disclosure to a caseworker about incidents involving Pendley that had occurred when she was between the ages of seven and ten.

J. D. gave a forensic interview in 2003 about the incidents. She stated in that interview that, beginning when she was seven, Pendley would come into her room when her mother was out of the house or asleep, then touch and put his mouth on her genitals. He would tell her to take her clothes off and become angry if she did not do so. On one occasion, Pendley asked J. D. to masturbate him, but she did not comply. On three consecutive nights when J. D. was ten, Pendley came

---

[1] OCGA § 16-6-4 (c).
[2] OCGA § 16-6-1 (a) (1).
[3] OCGA §§ 16-4-1 (criminal attempt); 16-6-4 (child molestation).
[4] OCGA § 16-5-70 (b).

into her room, removed some of their clothing, and put his penis partly inside her vagina. J. D. stated that during at least one of these episodes Pendley's actions hurt her. On those three nights, J. D. was afraid, she told Pendley to stop and to leave her alone, and she tried to push him away. Pendley told J. D. that her mother would doubt Pendley's love if she learned what had happened; this thought frightened J. D., who did not want her mother to be unhappy. J. D. also was afraid that her mother might dislike her if her mother learned what had happened. A videotape of J. D.'s forensic interview was shown to the jury. J. D. also testified at trial about the abuse.

A pediatric nurse who examined J. D. found no injuries to her hymen; she testified that this was not inconsistent with J. D.'s description of the incidents and the amount of time that had passed since the incidents occurred.

The state introduced evidence of similar transactions. Pendley's son testified to having seen Pendley pinch J. D. in the area of her breast. Pendley's daughter testified that, in 1989, when she was 15 years old, Pendley asked her to lie naked on a couch in their residence, but she did not comply.

Another similar transaction witness recounted an incident that occurred in 1970 or 1971, when she was nine years old and her aunt was married to Pendley. The witness was alone with Pendley when he tried to touch her vagina and tried to push his hand beneath her shorts. He asked to kiss her and, when she refused, got on top of her. The witness pushed and slapped Pendley, making him angry. Pendley made threats against the witness's mother and grandmother when she threatened to tell them what had occurred.

1. When an appellant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5]

(a) Pendley asserts that the evidence was insufficient to show venue in Gilmer County.[6] Specifically, he argues that J. D.'s testimony was unclear concerning where the specific acts of abuse alleged in the indictment had occurred. We disagree.

As to the counts for which Pendley was convicted, J. D. testified at trial that the acts alleged in the indictment occurred at a particular residence, and that the residence was located in Gilmer County. Although Pendley's counsel attempted on cross-examination

---

[5] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation omitted).

[6] See *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000) (state must prove venue beyond a reasonable doubt).

to cast doubt on J. D.'s memory of where these acts had occurred, any conflict in this evidence merely presented an issue of credibility for the jury's consideration.[7] J. D.'s testimony that the acts had occurred in Gilmer County authorized the jury to find that venue was proper in that county.[8]

(b) Pendley asserts that the evidence was insufficient to show the element of force required to convict him of forcible rape.[9] He cites the lack of evidence of a physical injury to J. D. But the state need not show that a victim was physically injured to prove rape.[10] "Lack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him."[11]

J. D. stated in the forensic interview that it hurt when Pendley pushed his penis partly into her vagina; that she did not want him to do that; that she told him to stop and tried to push him away; and that she was afraid to tell her mother about it because Pendley had threatened that this information would hurt her mother. This evidence was sufficient for a rational trier of fact to find Pendley guilty, beyond a reasonable doubt, of forcible rape.[12]

(c) Pendley asserts (and the state concedes) that the evidence was insufficient to support a conviction for child molestation, which the indictment alleged Pendley committed by having J. D. "place her hand on his penis and masturbate him." The jury, however, did not find Pendley guilty of child molestation; it found him guilty of the lesser included offense of attempted child molestation. The evidence that Pendley raised the subject of masturbation with J. D. and asked her to perform that act upon him was sufficient to support his conviction for this offense.[13]

2. Pendley contends that the court erred in allowing the state to introduce, as similar transaction evidence, the testimony of his

---

[7] See *Chavez v. State*, 306 Ga. App. 272, 274 (701 SE2d 902) (2010) (jury is solely responsible for judging witnesses' credibility, even on issue of venue).

[8] See *Brown v. State*, 287 Ga. App. 857, 858-859 (2) (652 SE2d 807) (2007).

[9] See OCGA § 16-6-1 (a) (1) (a person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will; carnal knowledge in rape occurs when there is any penetration of the female organ by the male sex organ).

[10] *Watson v. State*, 304 Ga. App. 128, 130 (1) (695 SE2d 416) (2010).

[11] *Matlock v. State*, 302 Ga. App. 173, 174 (690 SE2d 489) (2010) (citation omitted).

[12] See OCGA § 16-6-1 (a) (1); *Matlock*, supra at 174-175 (victim's testimony that "it hurt" when defendant pushed his penis in her vagina and that he threatened to put her out of the house if she told her parents or refused sexual contact was sufficient evidence of force to support rape conviction); *Casey v. State*, 237 Ga. App. 461, 462-463 (3) (515 SE2d 429) (1999) (evidence that ten-year-old victim repeatedly told defendant to stop before he complied was sufficient to show that intercourse was forcible and to support rape conviction).

[13] See *Johnson v. State*, 284 Ga. App. 147, 148-149 (1) (b) (643 SE2d 556) (2007); *Carey v. State*, 281 Ga. App. 816, 817-818 (1) (637 SE2d 757) (2006).

daughter and his former wife's niece.

> [F]or evidence of a similar transaction to be admissible, the [s]tate must demonstrate the following: (1) the evidence is admitted for a proper purpose; (2) sufficient evidence exists to establish the accused committed the independent act; and (3) a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter.[14]

After the state proffered the testimony of the two witnesses at a pretrial hearing for the purpose of showing Pendley's "lustful disposition for young children,"[15] the court found the similar transaction evidence admissible. We will uphold a trial court's decision to admit evidence of a similar transaction unless it was clearly erroneous.[16]

Pendley argues that these prior acts were so remote in time from the charged offenses (11 years in the case of the daughter, and 30 years in the case of the niece) that the prejudicial impact of the evidence substantially outweighed its probative value. He cites *Gilstrap v. State*[17] in support of his argument. In *Gilstrap*, the Supreme Court of Georgia stated that "[i]t should be clear . . . that an event 31 years in the past is too remote" to be admitted as similar transaction evidence.[18]

In *Pareja v. State*,[19] however, the Supreme Court of Georgia explained that *Gilstrap* did not create a bright-line rule regarding the admissibility of remote similar transaction evidence.[20] Instead, the Court instructed:

> [T]he lapse of time generally goes to the weight and credibility of the evidence, not to its admissibility. Nonetheless, where similar transactions are particularly remote because they were committed decades in the past, the passage of time is one of the more important factors to

---

[14] *Collins v. State*, 273 Ga. 93, 94 (2) (538 SE2d 47) (2000), citing *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[15] See *Leaptrot v. State*, 272 Ga. App. 587, 597 (3) (a) (612 SE2d 887) (2005) (demonstrating defendant's lustful disposition toward young girls was an appropriate purpose for similar transaction evidence).

[16] *Payne v. State*, 285 Ga. 137, 138 (674 SE2d 298) (2009).

[17] 261 Ga. 798 (410 SE2d 423) (1991).

[18] Id. at 799 (1) (b).

[19] 286 Ga. 117 (686 SE2d 232) (2009).

[20] Id. at 121.

weigh in considering the admissibility of the evidence in question, although it is not wholly determinative.[21]

Thus, the prejudicial impact of similar transactions that are remote in time may be outweighed by their probative value depending on the particular facts of each case and the purpose for which the similar transactions are being offered.[22] And when considering the admissibility of similar transaction evidence,

> the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. This rule is most liberally extended in cases involving sexual offenses because such evidence tends to establish that a defendant has such bent of mind as to initiate or continue a sexual encounter without a person's consent.[23]

Applying these principles, the Court in *Pareja* found no abuse of discretion in the trial court's admission of evidence of a similar transaction that had occurred 26 years before the defendant's alleged act of child molestation.[24]

This court has reached similar conclusions in cases involving significant lapses of time between the crime charged and similar transactions involving sexual acts against children.[25] Under these circumstances, we find no abuse of discretion in the trial court's decision to admit the similar transaction evidence.[26]

3. Pendley contends that the trial court erred by giving the following jury charge:

> I charge you that every person is presumed to be of sound mind and discretion, but this presumption may be rebutted. You may infer, if you wish to do so, that the acts of a person of sound mind and discretion are the product of that person's will and that a person of sound mind and discretion intends the natural and probable consequences of those acts. Whether or not you make such inference or inferences is such a matter solely within the discretion of the jury.

---

[21] Id. at 119 (citations, punctuation and emphasis omitted).

[22] Id. at 119-120.

[23] Id. at 121 (citation omitted).

[24] Id.

[25] See, e.g., *Shorter v. State*, 271 Ga. App. 528, 530 (2) (610 SE2d 162) (2005); *Wright v. State*, 259 Ga. App. 74, 75 (1) (576 SE2d 64) (2003).

[26] See *Pareja*, supra.

This charge, taken directly from the pattern jury instructions,[27] has been upheld by the Supreme Court of Georgia as a correct statement of the law.[28] Nevertheless, Pendley argues that, pursuant to *Francis v. Franklin*,[29] this charge impermissibly shifted the burden of persuasion to him on the element of intent. The Supreme Court of Georgia has rejected Pendley's argument, distinguishing the language used by the trial court in this case from that addressed in *Francis*.[30] We find no merit in this claim of error.[31]

4. Pendley contends that the trial court erred when it failed, for sentencing purposes, to merge his conviction for cruelty to children into his conviction for rape. At issue is whether the act of cruelty to children constituted a lesser included offense to the rape. One may not be "convicted of more than one crime where one crime is included in another."[32] OCGA § 16-1-6 (1) states that a crime is "included in a crime charged in the indictment or accusation" when "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [the other crime]." Under *Drinkard v. Walker*,[33] "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[34]

The offenses with which Pendley was charged each required proof of a fact that the other did not. The offense of cruelty to children required, among other things, a showing that Pendley maliciously caused J. D. cruel or excessive mental pain.[35] The offense of rape required, among other things, a showing that Pendley had carnal knowledge of J. D. forcibly and against her will.[36] As such, the trial court did not err in declining to merge the two offenses for purposes of sentencing.[37]

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

---

[27] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Fourth Ed., Vol. II, § 1.41.12 (2008).

[28] *Rivera v. State*, 282 Ga. 355, 364 (9) (647 SE2d 70) (2007) (considering identical charge contained in Council of Superior Court Judges, Suggested Pattern Jury Instructions, Third Ed., Vol. II, § 1.41.12 (2004)).

[29] 471 U. S. 307 (105 SC 1965, 85 LE2d 344) (1985).

[30] See *Flynn v. State*, 255 Ga. 415, 416 (2) (b) (339 SE2d 259) (1986); see also *Rivera*, supra.

[31] See *Rivera*, supra; *Flynn*, supra.

[32] *Bell v. State*, 284 Ga. 790, 792 (1) (671 SE2d 815) (2009), citing OCGA § 16-1-7 (a) (1).

[33] 281 Ga. 211 (636 SE2d 530) (2006).

[34] Id. at 215.

[35] OCGA § 16-5-70 (b).

[36] OCGA § 16-6-1 (a) (1).

[37] See *Drinkard*, supra.

DECIDED MARCH 25, 2011.

*Jennifer A. Trieshmann*, for appellant.

*Joe W. Hendricks, Jr., District Attorney, Darrell E. Wilson, Assistant District Attorney*, for appellee.