**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 30, 2013**

# In the Court of Appeals of Georgia

A13A0176. WYNN v. THE STATE.                    DO-007 C

DOYLE, Presiding Judge.

Following a jury trial, Donnie Lee Wynn was convicted of rape,[1] child molestation,[2] and incest.[3] He appeals the denial of his motion for new trial, challenging the sufficiency of the evidence with regard to his rape and incest convictions. Wynn also argues that the trial court abused its discretion by denying his motion for continuance and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-6-4 (a) (1).

[3] OCGA § 16-6-22 (a) (1).

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict."[4]

So viewed, the evidence shows that on Saturday, May 6, 2006, Wynn checked into a motel room containing a single, king-sized bed with his 15-year-old daughter.[5] After the victim went to sleep, Wynn got into bed with her, wrapped his arm around her chest, and began rubbing her stomach. Wynn then put his hands down the victim's underwear and put his fingers inside her vagina. He then turned her onto her back, pulled off her pants and underwear, and directed her to open her legs. When the victim, who was pretending to be asleep because she was frightened, failed to comply, he opened her legs and then penetrated her with his hands and his penis. According to the victim, Wynn had sexual intercourse with her "all night."

On Monday, May 8, 2006, the victim told her friend that "something happened with [her] dad." Later that day, the victim and her friend were summoned to the

---

[4] (Punctuation omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[5] The victim did not live with Wynn. She began spending time with him in 2005.

principal's office; "[b]oth girls were crying hysterically," and the friend advised the principal that the victim "was raped by her father." The victim then went to the school guidance counselor's office, where she wrote a multi-page statement detailing the incident at the motel.

The victim was subsequently taken to the hospital, where a sexual assault kit was conducted, including cervical swabs. Authorities also obtained buccal swabs from both Wynn and the victim. Subsequent testing by the Georgia Bureau of Investigation ("GBI") revealed that the cervical swabs taken from the victim contained spermatozoa, as well as the victim's DNA and DNA of Wynn's sperm cells.

Wynn testified at trial. He admitted that he took his daughter to a motel for the night on May 6, 2006, but he denied sexually assaulting her. Instead, Wynn testified that while the victim slept in the bed, he went in and out of the motel room while talking on the phone to his wife and watched television from a chair in the room, and he denied getting into the bed with the victim.

At the conclusion of the trial, the jury found Wynn guilty of rape, child molestation, and incest. The trial court denied Wynn's subsequent motion for new trial, and this appeal followed.

1. Wynn contends that the evidence was insufficient to sustain his conviction for rape because the State failed to prove the element of force. We disagree.

"A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ."[6]

> The term "against her will" means without consent; the term "forcibly" means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation. The fact that a victim is under the age of consent may supply the "against her will" element in a forcible rape case since it shows that the victim is incapable of giving legal consent. Importantly, only minimal evidence of force is required in order to prove rape of a child, and intimidation may substitute for force. Further, force may be proved by direct or circumstantial evidence. Lack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him.[7]

Here, the victim testified that she pretended to be asleep during the assault because she was scared. When she failed to obey Wynn's command that she open her

---

[6] OCGA § 16-6-1 (a) (1).

[7] (Citations and punctuation omitted.) *Wightman v. State*, 289 Ga. App. 225, 227-228 (1) (656 SE2d 563) (2008).

4

legs, he pushed them open. As Wynn spoke to her, the victim did not reply and continued to pretend to be asleep. When Wynn went into the bathroom during the repeated acts of sexual intercourse, she remained motionless in the bed because she was scared to move. Further, the victim testified that it "did not feel good" when her father had intercourse with her.

"The testimony of a single witness is generally sufficient to establish a fact."[8] Here, "the victim's testimony provided evidence of force necessary to support [Wynn's] rape conviction[]."[9] Thus, the trial court did not err by denying Wynn's motion for new trial on this basis.

2. Next, Wynn challenges his conviction of incest, arguing that there was insufficient evidence of consanguinity. This argument is without merit.

OCGA § 16-6-6 (a) (1) provides in relevant part that "[a] person commits the offense of incest when such person engages in sexual intercourse . . . with a person

---

[8] OCGA § 24-4-8 (2012).

[9] *Brown v. State*, 319 Ga. App. 680, 682 (1) (738 SE2d 132) (2013). See also *Smith v. State*, 319 Ga. App. 590, 592 (1) (a) (737 SE2d 700) (2013) ("the jury could infer from the victim's testimony and her young age that she did not willingly consent but was intimidated into complying with [the defendant's] demands out of fear").

5

whom he . . . knows he . . . is related to either by blood or by marriage as . . . [f]ather and child."

Wynn's argument that there was insufficient evidence that he was the victim's father is completely meritless, in light of the uncontested testimony of the victim and her mother that Wynn was the victim's father, and, more importantly, Wynn's repeated testimony at trial that the victim was his daughter.[10] The trial court did not err by denying Wynn's motion for new trial on this basis.

3. Wynn contends that the trial court abused its discretion by denying his motion for continuance made on the morning of trial. We disagree.

On October 22, 2007, Wynn filed a motion for serological testing of the DNA sample taken from the victim's cervical swab during the sexual assault kit "to determine whether or not the DNA sample came from blood, saliva, semen, or sperm." The trial court granted the motion on November 29, 2007. On January 8, 2008, GBI testing revealed the presence of spermatozoa and partially intact spermatozoa in the cervical smear slides, and the State faxed the results to Wynn's

---

[10] See *Pyburn v. State*, 301 Ga. App. 372, 373 (1) (687 SE2d 909) (2009); *Edmonson v. State*, 219 Ga. App. 323, 324 (3) (464 SE2d 839) (1995), overruled on other grounds, *Collins v. State*, 229 Ga. App. 658 (495 SE2d 59) (1997) (unrebutted testimony of the defendant, his wife, and the victim that the defendant adopted the victim was sufficient to support his conviction for incest).

trial counsel. The case was subsequently placed on a March 17, 2008 trial calendar. On March 10, 2008, Wynn filed a motion for continuance and for additional discovery, stating therein that although the defense had obtained the cervical swab from the victim, Wynn needed to obtain new "reference" buccal samples from himself and the victim for further testing by an independent laboratory.

The trial court heard argument on Wynn's motion for continuance on the morning of the first day of the trial beginning April 21, 2008. Wynn's trial counsel argued that he had just obtained the buccal swabs of the victim and the defendant two weeks previously, which did not give the laboratory enough time to perform additional testing. The State objected to a continuance, pointing out that the case had appeared on 14 calendars, including every available trial calender beginning in February 2007, with a single exception. The State also argued that the defense did not need a buccal swab from the victim to determine whether the DNA matter obtained from the victim's cervical swab contained semen or was some other bodily fluid of Wynn. The trial court denied the motion.

We will uphold a trial court's ruling on a motion for continuance absent a clear abuse of discretion.[11] "Further, to warrant a reversal on appeal, the appellant must

[11] See *Carter v. State*, 285 Ga. 394, 398 (7) (677 SE2d 71) (2009).

7

also show that harm resulted from the denial of the continuance."[12] "To show harm, [Wynn] was required to specifically identify what evidence or witnesses he would have put forth in his defense if his counsel had been given more time to prepare; speculation and conjecture are not enough."[13]

Here, the State's experts testified that the DNA recovered from the victim's cervical swab was identical to Wynn's DNA. Other than by speculating, Wynn has failed to demonstrate how additional time would have benefitted him or how the lack of a continuance harmed him. Indeed, at the hearing on the motion for new trial, defense counsel argued that

> [trial counsel] was ineffective . . . because the information that he could have obtained, the experts that he could have brought to trial, *may* have made a difference, and they *may* have provided a different opinion of the DNA evidence[,] and they *may* have provided a different outcome for the trial. . . .[14]

---

[12] (Punctuation omitted.) *French v. State*, 288 Ga. App. 775, 776 (2) (655 SE2d 224) (2007).

[13] (Punctuation omitted.) *Whorton v. State*, 318 Ga. App. 885, 890 (2) (735 SE2d 7) (2012).

[14] (Emphasis supplied.)

"Accordingly, the trial court did not err in denying the motion for continuance."[15]

4. Finally, Wynn contends that he received ineffective assistance of counsel. This argument presents no basis for reversal.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. As the appellate court, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principals to the facts. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel.[16]

(a) Wynn argues that trial counsel's failure to present expert witnesses and obtain additional DNA evidence constituted ineffective assistance of counsel. As we concluded in Division 3, Wynn "failed to make a proffer of any favorable evidence that could have been elicited if an expert witness had been called. Thus, [Wynn]

---

[15] Id. See also *Collum v. State*, 281 Ga. 719, 724 (5) (642 SE2d 640) (2007).

[16] *Whorton*, 318 Ga. App. at 891-892 (4).

failed to meet his burden of showing both deficient performance on the part of trial counsel and prejudice arising from such performance."[17]

(b) Wynn contends that trial counsel was ineffective by failing to object to hearsay testimony or to the State "badgering" him during cross-examination and by failing to rehabilitate him after cross-examination. These claims, however, are not supported by specific citation or argument. Therefore, "[w]e deem these portions of [Wynn's] ineffective assistance claim to be abandoned."[18]

> Further, [Wynn] did not call his trial counsel as a witness at the motion for new trial. Where, as here, trial counsel does not testify at the motion for new trial hearing . . . , it is extremely difficult to overcome the presumption that counsel's [decisions were] strategic. [Wynn] thus made no affirmative showing that the purported deficiency in counsel's representation was indicative of ineffectiveness, as opposed to being an example of a conscious, deliberate[,] and reasonable trial strategy.[19]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[17] (Citation and punctuation omitted.) *Ellis v. State*, 316 Ga. App. 352, 365 (8) (e) (729 SE2d 492) (2012).

[18] *Humphrey v. Riley*, 291 Ga. 534, 545 (II) (i) (731 SE2d 740) (2012). See also Court of Appeals Rule 25 (c) (2).

[19] (Citation and punctuation omitted.) *Newsome v. State*, 288 Ga. 647, 652-653 (4) (706 SE2d 436) (2011).